UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
TUNC M. KIVANC,                         )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )
                                        )        Civil Action No. 02-0954 (PLF)
CHIEF CHARLES RAMSEY, et al.,           )
                                        )
            Defendants.                 )
_____)


<u>OPINION</u>

            This matter is before the Court on defendants' motion for partial judgment on the

pleadings and defendants' motion for partial summary judgment.  Defendants have moved for

partial judgment on the pleadings with respect to: (1) claims against Chief of Police Charles

Ramsey in his official capacity; (2) negligent training and supervision claims against Chief

Ramsey and the District of Columbia; and (3) conspiracy claims against defendants Lieutenant

Diane Groomes and Officer Richard Ehrlich.  The defendants have moved for partial summary

judgment with respect to: (1) the negligent training and supervision claims against Chief Ramsey

and the District of Columbia; (2) negligence claims against Lieutenant Groomes and Officer

Ehrlich; (3) the demand for punitive damages against the District of Columbia; and (4) Section

1983 claims against Chief Ramsey and the District of Columbia.[1]

            The Court entered an order on September 30, 2005 denying defendants' motion

for partial judgment on the pleadings and granting in part and denying in part defendants' motion

_____
            [1]      Plaintiff now has voluntarily dismissed his Section 1983 claim against Chief
Ramsey in his individual capacity.

for partial summary judgment.  This Opinion explains the reasons for that Order.

## I.  BACKGROUND

Plaintiff Tunc Kivanc alleges that at approximately 3:15 a.m. on September 1, 2001, he left Cities Restaurant, located at 2424 18th Street, N.W., in the District of Columbia, retrieved his car from the valet and then parked it in a legal space so that he could make plans with his friends who were waiting for their cars.  See Complaint ¶ 13.  Plaintiff alleges that he then made eye contact with defendant Lieutenant Diane Groomes who was in her vehicle in traffic.  See id. ¶ 14.  Lieutenant Groomes was shouting at him to "get out of here," and so he moved towards his car and asked her if there was a problem with where the car was parked.  See id. ¶ 15.  Groomes "became infuriated," got out of her car, and threatened to jail plaintiff.  See id. ¶ 16.  Plaintiff maintains that as he prepared to move his car, Groomes advanced, punched him through the open window of his car, pulled him from the car, and repeated that he would go to jail.  See id. ¶ 17.  Groomes then called for more officers.  See id. ¶ 18.

Officer Richard Ehrlich arrived and allegedly yelled at plaintiff to stop resisting and to get on the ground, although plaintiff maintains that he was not resisting.  See Complaint ¶ 19.  Plaintiff alleges that Officer Ehrlich fell upon plaintiff, began to hit him, ripped his shirt, pushed him onto his car and threw him to the ground with the help of two other officers, one of whom shocked plaintiff with a stun gun.  See id. ¶ 20.  The officers allegedly continued to punch, kick, and hit plaintiff as he lay on the pavement.  See id.  Plaintiff then was put into a police car and driven to the Adams Morgan Precinct.  See id. ¶ 23.  Officers told plaintiff that he had been arrested for assault on a police officer, and plaintiff spent the night in jail without being permitted to contact counsel.  See id. ¶ 24.  The next morning he was escorted to a courtroom

where he was told that all charges had been dropped.  See id. ¶ 25.

## II.  MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

### *A.  Standard*

The standard applied to motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially the same as that for motions to dismiss under Rule 12(b)(6) for failure to state a claim.  See Ramirez v. Dep't of Corrections, 222 F.3d 1238, 1240-41 (10th Cir. 2000); Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987); Transworld Products Co. v. Canteen Corp., 908 F. Supp. 1, 2 (D.D.C. 1995).  On either motion, the Court may not rely on facts outside the pleadings and must construe the complaint in the light most favorable to the non-moving party.  See Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Granting judgment on the pleadings under Rule 12(c) or a motion to dismiss for failure to state a claim under Rule 12(b)(6) is warranted only if it appears beyond doubt, based on the allegations contained in the complaint, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  See also Alicke v. MCI Communications Corp., 111 F.3d 909, 912 (D.C. Cir. 1997).  If the Court does rely on matters outside the pleadings under either Rule 12(c) or Rule 12(b)(6), it must treat the motion as if it were one for summary judgment.  See FED. R. CIV. P. 12(b), (c).

### B. Suit against Chief Ramsey in his Official Capacity

Defendants maintain that because a claim against a municipal official in his official capacity is tantamount to a claim against the municipality itself, naming Chief Ramsey as a defendant in his official capacity is duplicative and unnecessary. See Memorandum of Points and Authorities in Support of Defendant's Motion for Partial Judgement on the Pleadings ("Def. Mem. for Partial J. on Pleadings") at 3. To this end, defendants cite several cases noting that the true party in interest in a suit against a municipal official in his official capacity is the entity of which the official is an agent. See, e.g., Karcher v. May, 484 U.S. 72, 78 (1987); Brandon v. Holt, 469 U.S. 464, 471-72 (1985). But, as plaintiff notes, none of the cases cited by defendants hold that a local official may not be sued in his official capacity when the municipality itself is also sued, and the Court is confident that defendants will suffer no prejudice as a result of Chief Ramsey's name appearing in the case caption. Defendants' motion for judgment with respect to the official capacity claim against Chief Ramsey therefore is denied.

### C. Negligent Training and Supervision: Chief Ramsey and the District of Columbia

Defendants next argue that plaintiff's claims against Chief Ramsey and the District of Columbia for negligent training and supervision of MPD officers fail to meet the pleading standards of Rule 8(a) of the Federal Rules of Civil Procedure, as plaintiff "has made no allegations that Defendant Ramsey has any personal knowledge of any facts germane to the subject incident to support liability against him." Def. Mem. for Partial J. on Pleadings at 4. Nor has plaintiff "alleged any specific facts to support a conclusion that Groomes and Ehrlich, or any of the unnamed officers, were inadequately trained or supervised." Id. Plaintiff responds that the

4

complaint is specific enough.  Moreover, although it appears from the face of plaintiff's complaint that his Section 1983 claims were alleged separate and apart from his negligent training and supervision claim, plaintiff now maintains that his negligent training and supervision claim is brought under Section 1983 as well as under the common law.  Plaintiff's Opposition to Defendants' Motion for Partial Judgment on the Pleadings ("Pl.'s Opp. to Defs.' Mot. for Partial J. on Pleadings") at 2-3.  Although defendants are correct that the Complaint's Seventh Cause of Action, entitled "Negligent Training and Supervision: District of Columbia and Chief Charles Ramsey," makes no mention of Section 1983, the Court is confident that the Complaint, when read as a whole under the liberal pleading standards of Rule 8 of the Federal Rules of Civil Procedure, provides defendants with sufficient notice of plaintiff's claim.  See FED. R. CIV. P. 8(f).

        With respect to Section 1983 negligent training and supervision claims, the D.C. Circuit has held that "it is possible for a Section 1983 plaintiff to satisfy Rule 8 by alleging both a failure to train and an unusually serious instance of misconduct that, on its face, raises doubts about a municipality's training policies."  Atchinson v. District of Columbia, 73 F.3d 418, 421 (D.C. Cir. 1996).  The Court notes that the District of Columbia also recognizes the common law tort of negligent training and supervision.  See Phelan v. City of Mount Rainier, 805 A.2d 930, 937-38 (D.C. 2002); Murphy v. Army Distaff Foundation, Inc., 458 A.2d 61, 63-64 (D.C. 1983); see also Tarpeh-Doe v. United States, 28 F.3d 120, 123-24 (D.C. Cir. 1994); Bisco v. Arlington County, 738 F.2d 1352, 1365 (D.C. Cir. 1984); Marusa v. District of Columbia, 484 F.2d 828, 830-31 (D.C. Cir. 1973).  "To invoke this theory of liability [under District of Columbia law] it is incumbent upon a party to show that an employer knew or should have known its employee

5

behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." Giles v. Shell Oil Corp., 487 A.2d 610, 613 (D.C. 1985). Plaintiff must also aver, and ultimately prove, that the defendants' failings were substantial factors in bringing about the harm complained of. Tarpeh-Doe v. United States, 28 F.3d at 124.

The Complaint alleges that Ramsey and the District had a "duty to properly train, supervise, investigate and correct improper actions of MPD officers," that Ramsey and the District of Columbia "recklessly" breached that duty, and that the breach was the "direct and proximate cause of the substantial and severe injuries" sustained by plaintiff. Complaint ¶¶ 73-76. Plaintiff further avers that he was attacked unprovoked by a police officer, that several other officers later joined the attack, and that the officers eventually assaulted and battered a crowd of bystanders that witnessed the melee and questioned officers about their conduct. See Complaint ¶¶ 15, 17-20, 22. Accepting these allegations as true, as the Court must on a motion for judgment on the pleadings, the Court finds that plaintiff has alleged both a failure to train and an unusually serious instance of misconduct that raises doubts about the District of Columbia's training policies for police officers, and therefore states valid common law and Section 1983 claims against Ramsey and the District of Columbia for negligent training and supervision.[2]

---

[2]     Defendants also move for summary judgment with respect to plaintiff's negligent training and supervision claim against Chief Ramsey and the District of Columbia. Defendants' arguments in support of summary judgment, however, merely reiterate defendants' arguments for judgment on the pleadings and assert that allowing plaintiff to proceed under a theory of negligent training and supervision would be unnecessary and duplicative because defendants already have conceded that the defendant police officers were acting within the scope of their employment at the time of the incident. Because defendants' motion for summary judgment on this claim does not rely on material outside the pleadings, the Court will deny defendants' motion for partial summary judgment as well.

*D.  Conspiracy: Police Officers*

Defendants next maintain that plaintiff's conspiracy claim against Lieutenant Groomes, Officer Ehrlich, and other unnamed officers must fail because he "does not allege any facts sufficient to constitute a conspiracy or identified [sic] proper parties who can engage in a conspiracy."  Def. Mem. for Partial J. on Pleadings at 5.

Defendants' first argument, that plaintiff fails to allege any facts sufficient to constitute a conspiracy, is without merit.  Civil conspiracy has two elements: " an agreement to take part in an unlawful action or a lawful action in an unlawful manner," and "an overt tortious act in furtherance of the agreement that causes injury."  Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983); see Hall v. Clinton, 285 F.3d 74, 82-83 (D.C. Cir. 2002).[3]  Plaintiff has alleged that "Lt. Groomes and Officer Ehrlich, and other unnamed Police Officers, by their actions and through common design . . . unlawfully conspired to assault and batter Mr. Kivanc," and that these defendants "conspired to file a file a false police report to cover up their transgressions," causing "as a result of this conspiracy . . . physical and emotional injury."  Complaint ¶¶ 59-61. These allegations are certainly sufficient to state a claim for conspiracy, in that plaintiff identifies an agreement ("through common design") to "assault and batter" plaintiff and to cover up the assault and battery with a false police report.  The complaint also alleges that defendants achieved this objective and caused plaintiff injuries as a result.  See Complaint ¶¶ 40-57.

---

[3]      As Judge Leon recently stated, in the civil context, a conspiracy is a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an *agreement* between the parties to inflict a wrong against or injury upon another, and an overt [tortious] act that results in damage."  Brady v. Livingood, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (quoting Graves v. United States, 961 F. Supp. 314, 320 (D.D.C. 1997) (emphasis in original).

Defendants' second argument, that plaintiff has failed to identify proper parties who are capable of participating in a conspiracy, merits more attention. Defendants maintain that the "intracorporate conspiracy doctrine" prevents plaintiff from pursuing his conspiracy claim, arguing that "a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952); see Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994).

The intracorporate conspiracy doctrine was created "to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory," and therefore has been held by most courts not to shield defendants from conspiracy claims brought under Section 1983 based on police misconduct. See Newsome v. James, 2000 U.S. Dist. LEXIS 5678, at *46 (N.D. Ill. 2000).[4] As in Newsome, the decisions alleged to have been made by the police officers in this case were "not the product of routine police department decision-making," and therefore "the conduct plaintiff challenges here does not fit [the] mold" of the intracorporate conspiracy doctrine cases. Id. See also Williams v. Brown, 269 F. Supp. 2d 987, 994 (N.D. Ill. 2003). The Court is not persuaded that agreements to conceal assault and battery with false police reports — as plaintiff alleges in this case — could conceivably be classified as the products of routine police department decision-making. The Court declines the defendants' invitation to adopt a categorical policy that it is legally impossible

---

[4]     The Court has failed to find a ruling by any court of appeals applying the intracorporate conspiracy doctrine to Section 1983 actions. And while the circuits are split on the application of the doctrine to Section 1985(3) claims, the D.C. Circuit has yet to address the issue.

for one police officer to conspire with another to deprive an individual of his rights under Section 1983. Plaintiff's allegations are sufficient to survive a Rule 12(c) motion, as the Court could imagine a set of facts that plaintiff might prove consistent with his allegations that would entitle him to relief. See Conley v. Gibson, 355 U.S. at 45-46.

### III. MOTION FOR PARTIAL SUMMARY JUDGMENT

#### A. Summary Judgment Standard

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits or declarations, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his] favor." Id. at 255; see also Washington Post Co. v. United States Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).

On a motion for summary judgment, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the

9

non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  To defeat summary judgment, a plaintiff must have more than "a scintilla of evidence to support his claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

### B.  Negligence: Police Officers

Defendants argue that plaintiff cannot maintain a common law negligence claim against Groomes, Ehrlich, and other unnamed officers as plaintiff is merely presenting his assault and battery claim under a different name.  Plaintiff alleges that defendants "negligently caused the assault and battery of Mr. Kivanc," breaching their "duty to exercise due care in the arrest of Mr. Kivanc," and causing plaintiff injuries.  Complaint ¶¶ 64-67.

The Court is "not bound by plaintiff's characterization of the action," and may examine whether plaintiff is actually pleading a negligence claim.  Maddox v. Bano, 422 A.2d 763, 765 (D.C. 1980).  First and foremost, "there is no such thing as a negligent battery," 1 DOBBS, LAW OF TORTS § 26 at 51 (2001); see District of Columbia v. Chinn, 839 A.2d 701, 706 (D.C. 2003), nor a negligent assault.  See Sabir v. District of Columbia, 755 A.2d 449, 452 (D.C. 2000); Hudson v. District of Columbia, 2005 WL 1378905, at *4 (D.D.C. 2005).  The District of Columbia Court of Appeals requires that "both negligence and battery claims, in order to go to the jury, must be separate and distinct from each other, even though related, and each of the two counts must be supported by the necessary evidence."  District of Columbia v. Chinn, 839 A.2d at 707.

Plaintiff has failed to allege separate and distinct claims or proffer evidence that supports both claims. Instead of pleading or demonstrating through the evidence that Groomes or Ehrlich committed a negligent act, plaintiff simply alleges that he was attacked, beaten, and jailed by defendants without provocation. This is not negligence, but the intentional tort of assault and battery. Invoking the words "duty," "breach," "cause," and "injury" does not transform an intentional tort into negligence. The Court therefore grants summary judgment for defendants on plaintiff's Fifth Cause of Action of negligence against Groomes, Ehrlich, and the unnamed officers.

### C.  Punitive Damages: District of Columbia

Defendants next argue that plaintiff cannot recover punitive damages from the District of Columbia in this case as a matter of law. See Defendants' Motion for Partial Summary Judgment ("Defs.' Mot. for PSJ") at 15. The Court agrees.

Punitive damages are not available against the District of Columbia absent an express statutory mandate or, possibly, in "extraordinary circumstances." See City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981); Butera v. District of Columbia, 235 F.3d 637, 658 (D.C. Cir. 2001); Smith v. District of Columbia, 336 A.2d 831, 832 (D.C. 1975). The D.C. Circuit has interpreted "extraordinary circumstances" as situations "where a jurisdiction's taxpayers are directly responsible for perpetrating the policies that caused [a] plaintiff's injuries," or where "a municipality or its policymakers have intentionally adopted [an] unconstitutional policy that caused the damages in question." See Daskalea v. District of Columbia, 227 F.3d 433, 447 (D.C. Cir. 2000); see Butera v. District of Columbia, 235 F.3d at 658.

11

Plaintiff cites no statute authorizing punitive damages against the District of Columbia and fails to proffer any evidence that "extraordinary circumstances" are present in this case.  The Court therefore finds that punitive damages are unavailable against the District of Columbia and grants summary judgment in favor of defendants on this issue.

### D.  Section 1983: District of Columbia and Chief Ramsey

Finally, defendants assert that plaintiff cannot maintain his Section 1983 claims against the District of Columbia or against Chief Ramsey in his individual capacity.  See Defs.' Mot. for PSJ at 8-11.  Although plaintiff now has voluntarily dismissed his Section 1983 claim against Chief Ramsey in his individual capacity, plaintiff continues to press his Section 1983 claim against the District of Columbia.  See Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment ("Pl.'s Opp. to PSJ") at 4. n.6.

While Section 1983 claims can be maintained against municipalities, see Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), "a municipality can be found liable under  Section 1983 only where the municipality *itself* causes the constitutional violation at issue.  *Respondeat superior* or vicarious liability will not attach under Section 1983."  City of Canton v. Harris, 489 U.S. 378, 387 (1989) (emphasis in original).  Moreover, "[a] city is answerable under Monell when an official policy or custom causes the complainant to suffer a deprivation of a constitutional right."  Carter v. District of Columbia, 795 F.2d 116, 122 (D.C. 1986).  A municipality's "inaction, including its failure to train or supervise its employees adequately, constitutes a 'policy or custom' under Monell when it can be said that the failure amounts to 'deliberate indifference' towards the constitutional rights of persons in its domain.'" Daskalea v.

District of Columbia, 227 F.3d at 441 (quoting City of Canton v. Harris, 489 U.S. at 388-89 n.7).

Identifying one "unsatisfactorily trained [officer] will not alone suffice to fasten liability on [a]

city"; instead, "[only] where a failure to train reflects a 'deliberate' or 'conscious' choice by a

municipality . . . can a city be liable."  City of Canton v. Harris, 489 U.S. at 391, 389.  "A Section

1983 plaintiff must prove, in addition to a policy of deliberate indifference, a close nexus

between 'the identified deficiency in a city's training program' and 'the ultimate injury.'"

Dorman v. District of Columbia, 888 F.2d 159, 165 (D.C. Cir. 1989) (quoting City of Canton v.

Harris, 489 U.S. at 391).

        Plaintiff alleges that the District of Columbia and Chief Ramsey exhibited a

"disregard for the rights of others, in particular those of [plaintiff]," and that their "failure to act"

resulted in plaintiff's injuries.  Complaint ¶¶ 75-76.  Plaintiff also maintains that the evidence in

the record establishes seven facts supporting municipal liability.  First, Lieutenant Groomes is a

"high ranking supervisory official in the police department."  Pl.'s Opp. to PSJ at 6; see Dep. of

Plaintiff Tunc Kivanc ("Dep. of Kivanc"), Ex. 1 at 52-69; Dep. of Menan Saydam ("Dep. of

Saydam"), Ex. 2 at 33-49.  Second, at least four police officers "acted in concert to deprive

plaintiff of his constitutional rights."  Pl.'s Opp. to PSJ at 6; see Opp. of Defs. to Pl.'s Mot. to

Compel Discovery at 2; Dep. of Saydam, Ex. 2 at 61-62.  Third, at least thirty other police

officers witnessed and aided Groomes in arresting plaintiff.  See Answers to Interrogatories of Lt.

Groomes, Ex. 3, # 12; Dep. of Lt. Groomes Ex. 4 at 38; Dep. of Officer Ehrlich, Ex. 5 at 30;

Answers to Interrogatories of Officer Ehrlich, Ex. 6, # 13.  Fourth, "some of these additional

officers assaulted numerous other innocent bystanders, amounting to a police 'riot.'" Pl.'s Opp.

to PSJ at 6-7; see Dep. of Kivanc, Ex. 1 at 64, 104, 108, 114-115; Dep. of Saydam, Ex. 2 at 72-

13

73; Pl.'s Supplemental Disclosure (Corrected), Docket No. 28.  Fifth, "at least two officers

conspired to file a false police report concerning the incident to cover up their transgressions."

Pl.'s Opp. to PSJ at 7; see Dep. of Lt. Groomes, Ex. 4 at 30-32 (describing inaccuracies in

plaintiff's arrest report); Dep. of Officer Ehrlich, Ex. 5 at 41-42 (stating that Lt. Groomes

instructed Ehrlich to include information in the arrest report that Groomes denied in her

deposition).  Sixth, "a call to police headquarters during the incident to report the misconduct

was ignored."  Pl.'s Opp. to PSJ at 7; see Pl.'s Supplemental Disclosure (Corrected), Docket No.

28 (designating Azheh Mahoozi as a witness who will testify that, despite assurances to the

contrary, headquarters did not send an officer to investigate the melee).  Seventh, several police

officers refused to provide witnesses with a citizen complaint form upon their requests.  See Dep.

of Kivanc, Ex. 1 at 138; Dep. of Saydam, Ex. 2 at 78-79.[5]

       Plaintiff argues, essentially, that the sheer number of officers involved in the

deprivation of his rights demonstrates a District of Columbia policy or custom of tolerating such

conduct.  To support his argument, the plaintiff cites the police officers involved in plaintiff's

arrest and the subsequent melee, those officers who harmed plaintiff personally, those who

attacked witnesses, and those who  refused to provide plaintiff or other witnesses with a citizen

complaint form. Plaintiff further argues that the District of Columbia's policies in handling

citizen complaints against police officers, in those situations where complainants actually receive

_____

[5]     Plaintiff also cites, as evidence of a municipal policy or custom of inadequate
police training, a newspaper article describing inappropriate police conduct during a mass arrest
in September 2002.  See Arthur Santana, D.C. Council Probing Police Conduct in Protests,
WASH. POST, Apr. 29, 2003, at B03.  The Court does not think that newspaper articles alone are
sufficient evidence of a municipality's policy or custom.

complaint forms, is perfunctory and excessively deferential to the police.  Finally, plaintiff

maintains that the fact that Ehrlich and Groomes have prior and unsustained complaints against

them for excessive force and assault and battery is more evidence that the District of Columbia

and its policymakers know that the Metropolitan Police Department inadequately trains and

supervises its officers, but remain deliberately indifferent to the harms these policies have caused

plaintiff and others.

      In the Court's view, plaintiff has not offered sufficient evidence at this stage to

demonstrate that the District of Columbia's policies in evaluating citizen complaints alone rises

to the level of deliberate indifference under Section 1983.  Compare Beck v. City of Pittsburgh,

89 F.3d 966 (3rd Cir. 1996).  Nor do the existence of unproved, unsubstantiated or unresolved

complaints against Ehrlich and Groomes demonstrate deliberate indifference on the part of the

District of Columbia.  Anyone can file a complaint.  The question is whether the prior acts by

these officers have been proved or substantiated in other fora.

      The question, then, is whether, drawing all reasonable inferences in plaintiff's

favor, he has proffered enough evidence to permit the case to go forward to trial where plaintiff

might be able to establish the existence of a municipal policy or custom by the alleged behavior

of the many police officers during and after his arrest.  There is precedent for the proposition that

"where other evidence of the [unconstitutional] policy has been presented, and the single incident

in question involves the concerted action of a large contingent of municipal employees, the event

itself provides some proof of the existence of the underlying policy or custom."  Bordanaro v.

McLeod, 871 F.2d 1151, 1156-57 (1st Cir. 1989) (citations omitted).  Still, the "complainants

must demonstrate a high degree of fault" and "a close causal nexus between the identified

deficiency in the city's training program and the ultimate injury." Ferrell v. Walker, 1991 U.S.

Dist. LEXIS 1523, at *5 (D.D.C. 1991) (citing City of Canton v. Harris, 489 U.S. 378); see, e.g.,

Kibbe v. City of Springfield, 777 F.2d 801, 807 (1st Cir. 1985) (finding deliberate indifference

where plaintiff was killed by police in a car chase and evidence indicated that police department

"gave officers virtually no guidance  in apprehending suspects fleeing in motor vehicles" while

one officer testified that "his training on stopping a car consisted of being told to move up behind

it, put on his lights and siren, and hope the suspect pulls over."); Grandstaff v. City of Borger,

Texas, 767 F.2d 161, 171 (5th Cir. 1985) (finding deliberate indifference where six officers – the

entire night shift of the police force in question – recklessly shot to death an innocent man during

pursuit of another suspect).

   Plaintiff's allegations that Metropolitan Police Department officers attacked

plaintiff, assaulted bystanders, caused a riot, filed a false police report, and denied plaintiff and

citizen witnesses complaint forms are extremely serious.  Viewed in the light most favorable to

the plaintiff, it would appear that the MPD officers engaged in a concerted scheme to deprive

plaintiff of his rights, beginning at the time of his arrest and the subsequent melee and continuing

over a period of days during which police reports were falsified.  Furthermore, plaintiff's

allegation that a phone call to the police station during the melee was ignored would seem to

suggest that it was not merely the officers at the scene, but those who were uninvolved in the

physical altercation and presumably not being directed by those involved in the altercation, who

participated in this pattern of abuse.  Given the variety of abuses, the number of officers, and

time period during which these abuses allegedly took place, the plaintiff has created a genuine

issue of material fact as to whether the combination of these factors can demonstrate that the

District of Columbia was "deliberately indifferent" to plaintiff's constitutional rights and whether this deliberate indifference is causally related to plaintiff's injuries.  The Court therefore denies defendant's motion for summary judgment on plaintiff's Section 1983 claim against the District of Columbia.

## IV.  CONCLUSION

For the foregoing reasons, the Court will denies defendants' motion for partial judgment on the pleadings, but grants in part and denies in part defendants' motion for partial summary judgment.  An Order consistent with this Opinion issued on September 30, 2005.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  January 4, 2006